# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

* * *

| | |
|---|---|
| TANIA V. REAL DE RAGAN, | Case No. 2:16-cv-02468-BNW |
| Plaintiff, | |
| v. | **ORDER** |
| NANCY A. BERRYHILL[*], Acting Commissioner of Social Security, | |
| Defendant. | |

This matter was referred to the undersigned magistrate judge on consent under 28 U.S.C. § 636(c). (ECF No. 19.) The case involves review of an administrative action by the Commissioner of Social Security ("Commissioner") denying Plaintiff Tania V. Real De Ragan's ("Plaintiff") application for disability insurance benefits under Title II of the Social Security Act. The court has reviewed Plaintiff's motion for reversal or remand (ECF No. 12), filed April 5, 2017, and the Commissioner's response and cross-motion to affirm (ECF No. 18), filed July 4, 2017. Plaintiff did not file a reply.

## I. BACKGROUND

### 1. Procedural History

On September 12, 2011, Plaintiff applied for disability insurance benefits under Title II of the Act, alleging an onset date of July 21, 2009. AR[1] 159-165. Plaintiff's claim was denied initially on January 23, 2012, and on reconsideration on December 30, 2013. AR 97-101; 109-111. A hearing was held before an Administrative Law Judge ("ALJ") on April 2, 2015. AR 34-

---

[*] Nancy A. Berryhill has been substituted for her predecessor in office, Carolyn W. Colvin, pursuant to Federal Rule of Civil Procedure 25(d).

[1] AR refers to the Administrative Record in this matter. (Notice of Manual Filing (ECF No. 13).)

64. On May 13, 2015, the ALJ issued a decision finding Plaintiff was not disabled. AR 13-27. The ALJ's decision became the Commissioner's final decision when the Appeals Council denied review. AR 1-6. Plaintiff, on October 21, 2016, commenced this action for judicial review under 42 U.S.C. §§ 405(g). (*See* Compl. (ECF No. 1).)

## II. DISCUSSION

### 1. Standard of Review

Administrative decisions in social security disability benefits cases are reviewed under 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) provides: "Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides." The court may enter "upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.* The Ninth Circuit reviews a decision affirming, modifying, or reversing a decision of the Commissioner *de novo*. *See Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2004).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). However, the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). In determining whether the Commissioner's findings are supported by substantial evidence, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's

conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

Under the substantial evidence test, findings must be upheld if supported by inferences reasonably drawn from the record. *Batson*, 359 F.3d at 1193. When the evidence will support more than one rational interpretation, the court must defer to the Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Consequently, the issue before the court is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence. It is incumbent on the ALJ to make specific findings so that the court does not speculate as to the basis of the findings when determining if the Commissioner's decision is supported by substantial evidence. Mere cursory findings of fact without explicit statements as to what portions of the evidence were accepted or rejected are not sufficient. *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981). The ALJ's findings "should be as comprehensive and analytical as feasible, and where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based." *Id.*

### 2. Disability Evaluation Process

The individual seeking disability benefits has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of her claim for disability. 20 C.F.R. § 404.1514. If the individual establishes an inability to perform her prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If

at any step the ALJ determines that he can make a finding of disability or non-disability, a determination will be made, and no further evaluation is required. *See* 20 C.F.R. § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). Step one requires the ALJ to determine whether the individual is engaged in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities usually for pay or profit. *Id.* § 404.1572(a)-(b). If the individual is engaged in SGA, then a finding of not disabled is made. If the individual is not engaged in SGA, then the analysis proceeds to the step two.

Step two addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits her from performing basic work activities. *Id.* § 404.1520(c). An impairment or combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. *Id.* § 404.1521; *see also* Social Security Rulings ("SSRs") 85-28, 96-3p, and 96-4p.[2] If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to step three.

Step three requires the ALJ to determine whether the individual's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If the individual's impairment or combination of impairments meet or equal the criteria of a listing and the duration requirement (20 C.F.R. § 404.1509), then a finding of disabled is made. 20 C.F.R. § 404.1520(h). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to step four.

---

[2] SSRs constitute the SSA's official interpretation of the statute and regulations. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); *see also* 20 C.F.R. § 402.35(b)(1). They are entitled to some deference as long as they are consistent with the Social Security Act and regulations. *Bray*, 554 F.3d at 1223 (finding ALJ erred in disregarding SSR 82-41).

But before moving to step four, the ALJ must first determine the individual's residual functional capacity ("RFC"), which is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. *See* 20 C.F.R. § 404.1520(e); *see also* SSR 96-8p. In making this finding, the ALJ must consider all the relevant evidence, such as all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529; *see also* SSRs 96-4p and 96-7p. To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

Step four requires the ALJ to determine whether the individual has the RFC to perform her past relevant work ("PRW"). 20 C.F.R. § 404.1520(f). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years or 15 years before the date that disability must be established. In addition, the work must have lasted long enough for the individual to learn the job and performed a SGA. 20 C.F.R. §§ 404.1560(b) and 404.1565. If the individual has the RFC to perform her past work, then a finding of not disabled is made. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to step five.

The fifth and final step requires the ALJ to determine whether the individual is able to do any other work considering her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). If she is able to do other work, then a finding of not disabled is made. Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the economy that the individual can do. *Yuckert*, 482 U.S. at 141-42.

Here, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920. AR 15-27. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity from the alleged onset date of July 21, 2009. AR 15. At step two, the ALJ found Plaintiff had medically determinable "severe" impairments of obesity; small tendon left shoulder tear, status post arthroscopy left shoulder times two; status post right carpal tunnel release, trigger finger release, and cubital tunnel release; degenerative joint disease of the right knee; degenerative disc disease of the cervical spine and lumbar spine; and major depressive disorder. *Id.* The ALJ found Plaintiff's diabetes mellitus, hypertension, and migraine headache to be "non-severe." AR 15-16. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 16. At step four, the ALJ found Plaintiff has the residual functional capacity to occasionally lift and/or carry 20 pounds; frequently lift or carry 10 pounds; occasionally reach overhead with the left arm; perform simple repetitive tasks; and engage in short, superficial contact with supervisors, coworkers, and the general public. AR 17. The ALJ also found Plaintiff unable to perform any past relevant work. AR 25.

Considering Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. AR 26. Accordingly, the ALJ concluded Plaintiff was not under a disability at any time from July 21, 2009 through December 31, 2014, the date Plaintiff was last insured. AR 27.

### 3. Analysis

#### a. Whether the ALJ properly considered Plaintiff's pain and symptom testimony

Plaintiff moves to remand this matter because she argues the ALJ improperly rejected her pain and symptom testimony.

The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms not entirely consistent with the medical evidence and other evidence in

the record, and, therefore, "less than fully credible." AR 23. The ALJ specifically found Plaintiff "has not generally received the type of medical treatment one would expect for a totally disabled individual[;]" she has "significant gaps" in treatment[;]" she has "relatively infrequent trips to the doctor for the allegedly disabling symptoms[;]" she has "not been entirely compliant in taking prescribed medications," and she has "also engaged in a somewhat normal level of daily activity and interaction." *Id*. Plaintiff argues the ALJ's cited reasons (i.e., extent of medical treatment; gaps in treatment; and activities of daily living) do not provide "clear and convincing reasons" for discounting Plaintiff's pain and symptom testimony. The Commissioner responds the ALJ's cited reasons were "proper reasons" for not finding Plaintiff's pain and symptom testimony fully credible. The court will address each of the cited reasons in turn.

An ALJ engages in a two-step analysis to determine whether a plaintiff's testimony regarding subjective pain or symptoms is credible.[3] "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (internal quotation marks omitted). "The claimant is not required to show that [the plaintiff's] impairment could reasonably be expected to cause the severity of the symptom [the plaintiff] has alleged; [the plaintiff] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the [plaintiff] meets the first test and there is no evidence of malingering, the ALJ can only reject the [plaintiff's] testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence

---

[3] SSR 96-7p, the regulation that governed credibility determinations at the time of this decision, was superseded by SSR 16-3p in March 2016. SSR 16-3p "eliminat[es] the use of the term 'credibility' .... [to] clarify that subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, available at 2016 WL 1119029, at *1 (Mar. 16, 2016). However, both regulations require an ALJ to consider the same factors in evaluating the intensity, persistence and limiting effects of an individual's symptoms. *See id*. at *7; SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996).

undermines the [plaintiff's] complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas*, 278 F.3d at 958 ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [the plaintiff's] testimony.")). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

### i. Plaintiff's gaps in treatment

In his decision, the ALJ writes, "The record reflects significant gaps in the claimant's history of treatment and relatively infrequent trips to the doctor for the allegedly disabling symptoms." AR 23. As the Commissioner correctly argues, the ALJ is not required to believe every allegation of a plaintiff's disability. *Orn v. Astrue,* 495 F.3d 625, 635 (9th Cir. 2007). In fact, an ALJ may consider an unexplained, or inadequately explained, failure to seek treatment or to follow a prescribed course of treatment when evaluating the claimant's subjective symptoms. *Id.* at 638; *see also Smolen*, 80 F.3d at 1284 (holding that an ALJ may discredit a plaintiff's symptom complaints if the plaintiff fails to show good reason for failing to follow treatment recommendations). But the ALJ's decision "must contain specific reasons for the finding on credibility, [be] supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p.

Here, even though the ALJ's reason for discounting Plaintiff's pain and symptom testimony is general (i.e., she has "significant gaps" in treatment and "relatively infrequent trips to the doctor for the allegedly disabling symptoms"), the ALJ does, in fact, summarize Plaintiff's treatment. AR 23, 18-23. In his summary, the ALJ notes Plaintiff has undergone at least five

surgeries: arthroscopic rotator cuff repair, arthroscopic articular debridement, and subacromial decompression in October 2008; orthoscopic repair in 2009; left shoulder diagnostic and operative arthroscopic and rotator cuff repair in 2011; right endoscopic carpal tunnel release with volar fasciotomy in February 2013; right thumb, middle, and ring open trigger finger release in July 2013; and right endoscopic cubital tunnel release, external neurolysis of ulnar nerve, and right lateral epicondyle with steroid injection in September 2013. AR 18-20. Between these surgeries, the ALJ explains that Plaintiff underwent various imaging studies (e.g., left shoulder MRI arthrogram; X-rays of the bilateral hands, wrists, and fingers; lumbar spine MRI; right knee MRI). AR 18-23. The ALJ also notes the various medications, including Lidoderm, Hydrocodone, Ibuprofen, and Tramadol, Plaintiff took during this period. AR 19, 21, 22. Additionally, the ALJ discusses Plaintiff's May 2011 medical visit in which she stated to the medical provider that "[h]er last checkup was two years ago." AR 19. Accordingly, the gaps in treatment between 2009 and 2011 are evident to the court from the ALJ's decision.

This is not the end of the analysis, however. Before drawing a negative inference from the absence of medical care or gaps in treatment, the ALJ must explore the plaintiff's reasons for these issues. SSR 96-7p ("[T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, *or other information in the case record*, that may explain infrequent or irregular medical visits or failure to seek medical treatment. The adjudicator may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner.") (emphasis added)). *See also Hunt v. Colvin*, 642 Fed. Appx. 755, 757 (9th Cir. 2016) (holding that the ALJ did inquire into the plaintiff's lack of treatment, but the "ALJ's sole reason for discounting Hunt's explanations for the lack of medical treatment—that Hunt could afford to smoke half a pack of cigarettes per day—is not persuasive" and that the ALJ erred in not addressing the plaintiff's other cited reason for not treating); *Henry v. Commissioner of Social Sec.*, 802 F.3d 1264, 1269 (11th Cir. 2015) ("The ALJ had an obligation to 'scrupulously and

conscientiously probe' into the reasons underlying [the plaintiff's] course of treatment, yet there is nothing in the record indicating the ALJ inquired into or considered [the plaintiff's] financial ability to seek an alternate treatment plan. Instead, the ALJ focused on the absence of aggressive treatment as a proxy for establishing disability."); *Roddy v. Astrue,* 705 F.3d 631, 638 (7th Cir. 2013) ("But at the same time, an ALJ 'must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide.'") (internal citations omitted).

An ALJ's duty to inquire into a plaintiff's lack of treatment is a necessary step because, as the Ninth Circuit has held, "[d]isability benefits may not be denied because of the [plaintiff's] failure to obtain treatment [she] cannot obtain for lack of funds." *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995); *see also Trevizo v. Berryhill,* 871 F.3d 664, 681 (9th Cir. 2017). Here, it appears the ALJ did not inquire into the reasons for Plaintiff's "significant gaps in . . . treatment and relatively infrequent trips to the doctor for the allegedly disabling symptoms." AR 23. Yet the record suggests that insufficient funds may be a reason for Plaintiff's gaps in treatment. *See*, *e.g.,* AR 331 (According to the North Vista Hospital May 6, 2011 medical records, "Apparently, the patient does not have insurance and she has not been seen by doctors since the last admission, which was October 2009 at North Vista Hospital."). As such, the court finds that the ALJ erred in discrediting Plaintiff's symptoms based on her medical history without exploring the reasons behind her gaps in treatment. *See* SSR 96-7p.

### ii. Plaintiff's lack of compliance with prescribed medications

Next, the ALJ finds Plaintiff had "not been entirely compliant in taking prescribed medication."[4] AR 23. But the ALJ does not discuss Plaintiff's non-compliance beyond citing page one of Exhibit 3F, which reads, "The patient is a 48-year-old female with a past medical history of diabetes mellitus type 2, who did not take any medication for a long time." AR 329. In

---

[4] In her brief, the Commissioner writes, "The ALJ noted that Plaintiff had not been entirely compliant with prescribed treatment . . . ." (ECF No. 18 at 8.) The ALJ, however, finds Plaintiff was not entirely compliant with *medication*. AR 23.

fact, the ALJ references other instances of Plaintiff taking prescribed medication like a Lidoderm patch and Hydrocodone. AR 19. The Commissioner, in her brief, does discuss another instance of Plaintiff being non-compliant with her blood pressure medication. (ECF No. 18 at 9.) But, as previously noted, the court is bound to affirm an ALJ's decision based only on a ground the ALJ invoked. *See Orn*, 495 F.3d at 630; *Stout*, 454 F.3d at 1054. Accordingly, the ALJ's one citation to Plaintiff's non-compliance (related to a medical impairment the ALJ identified as non-severe, AR 16,) is not sufficient to establish "specific, clear and convincing" reasons for discounting Plaintiff's testimony. *See Ghanim*, 763 F.3d at 1163. On these facts, the court cannot conclude that substantial evidence of medication non-compliance exists to support the ALJ finding Plaintiff not credible based on non-compliance.

### iii. Plaintiff's "somewhat normal" activities of daily living

Finally, the ALJ finds Plaintiff's activities of daily living include "taking care of her grandchildren and her husband, pet care, preparing meals, laundry, cleaning, driving, paying bills, cooking, decorating her house, painting, reading, shopping, spending time with others, and going to the store, garage sales, Goodwill, church, and the movies (Exhibits 8E, 9E, and Testimony)." AR 23. The ALJ cites to two adult function reports Plaintiff completed on July 25, 2013 (Exhibit 8E) and July 31, 2013 (Exhibit 9E), respectively, and to Plaintiff's hearing testimony on April 2, 2015. *Id*.

A plaintiff does not need to be totally incapacitated to be found disabled. *Taylor v. Commissioner of Social Sec. Admin.,* 659 F.3d 1228, 1235 (9th Cir. 2011); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). In fact, a plaintiff can be found disabled even if she is able to perform some activities of daily living. *See Garrison,* 759 F.3d at 1016. Because total incapacitation is not required for an ALJ to find a plaintiff disabled, the Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Id*. For example, the Ninth Circuit has held that "many home activities may not be easily transferable to a

work environment where it might be impossible to rest periodically or take medication." *Smolen,* 80 F.3d at 1287 n.7.  Similarly, the Circuit has explained that a plaintiff should not "be penalized for attempting to lead [a] normal li[fe] in the face of [her] limitations." *Reddick,* 157 F.3d at 722. But an ALJ can, nonetheless, determine that a plaintiff's reported activities of daily living provide a valid reason for an adverse credibility determination. *Burrell v. Colvin*, 775 F.3d 1133, 1137–38 (9th Cir. 2014) (citing *Light v. Soc. Sec. Admin.,* 119 F.3d 789, 792 (9th Cir. 1997) ("To find the claimant not credible the ALJ must rely either on reasons unrelated to the subjective testimony (e.g., reputation for dishonesty), on conflicts between [her] testimony and [her] own conduct, or on internal contradictions in that testimony.")).

      Here, the Court is concerned that in making an adverse credibility determination, the ALJ did not consider the nuances of Plaintiff's abilities.  Put another way, the Court is concerned that the Plaintiff gave specific responses about what daily activities she's able to do, how long these activities take her, how frequently she does them, and how much help she needs in doing them, but the ALJ appears to have glossed over these qualifications. For example, the ALJ writes that Plaintiff's daily activities *presently* include "cooking, decorating her house, [and] painting . . . ." AR 23.  But in the first function report the ALJ cites to support his adverse credibility finding,[5] Plaintiff writes that "cooking *was* my hobbie [sic] and decorating my house painting, moving things around[.]"  AR 229 (emphasis added).  Importantly, Plaintiff, in the same function report, admits to preparing her own meals ("oat[]meal[,] sandwiches[,] fru[i]t[,] rice[,] meats[, and] chicken[,]") but notes that this process takes her about two-to-three hours due to difficulty cutting and opening cans.  AR 227.  In the second function report Plaintiff completed,[6] she writes that she "sometimes" does not eat and "sometimes" makes "a sandwich or egg."  AR 235.

      The ALJ also finds Plaintiff's activities of daily living include taking care of her pets.  AR 23.  However, Plaintiff qualified this statement, nothing that she cannot independently take care of her pets.  *See, e.g.,* AR 226 (Plaintiff states in her first function report that she "[f]eed[s] them [the pets] give[s] them water and bath[es] [sic] them because I cant [sic] any more [sic] to [sic]

---

[5] Plaintiff completed this function report on July 25, 2013.  AR 225-232.

[6] Plaintiff completed this function report on July 31, 2013.  AR 233-240.

1   hard to do it by myself") and AR 234 (Plaintiff states that she feeds her pets "when I can[,]" but

2   that otherwise her son or husband bathe and feed them).[7]

3         Additionally, the ALJ finds Plaintiff's daily living activities involve "taking care of her

4   grandchildren . . . ." AR 23. Plaintiff, however, writes in her second function report that she

5   "sometimes" takes care of her grandchildren by "just fix[ing] them lunch and watch[ing] TV with

6   them[]" and "sometimes take[s] [her] grandson to school." AR 234.

7         Further, the ALJ finds Plaintiff's daily activities to include "going to the store, garage

8   sales, Goodwill, church, and the movies." AR 23. But in the second function report, Plaintiff

9   specifies that she goes to the store once a month; she attends church every other Saturday; and she

10  attends the movies every six months. AR 229.

11        On these facts, the Court does not find that the ALJ gave specific, clear, and convincing

12  reasons for discrediting Plaintiff's symptom testimony based on her activities of daily living. This

13  is because Plaintiff's daily activities, as she described them in her testimony and function reports

14  with all of her qualifications, appear consistent with her statements about the impairments caused

15  by her pain. Further, Plaintiff's daily activities, as described in her testimony and function

16  reports, also appear consistent with an inability to secure employment and function in a

17  workplace environment. For example, grocery shopping once a week; feeding her pets with the

18  assistance of her husband or son; preparing meals, such as sandwiches, for herself, her husband,

19  and her grandchildren; cleaning;[8] and performing laundry[9] are not activities that necessarily

20  translate into being able to work full-time, particularly in light of the conditions necessary for

21  Plaintiff to complete these tasks. *See Saunders v. Astrue*, 433 Fed. Appx. 531, 533 (9th Cir.

22  2011) ("We have held consistently that, activities such as light household chores, cooking meals,

23  and grocery shopping are activities that do not necessarily translate to the work environment.")

24  (citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989) (citing *Vertigan,* 260 F.3d at 1050)

---

[7] When asked what she does during the day, Plaintiff testified at her April 2, 2015 hearing that she "just sit[s] and read[s] or play[s] with my dogs just --[.]." AR 54.

[8] Plaintiff states in her first function report that cleaning takes her all day to complete. AR 227.

[9] Plaintiff states that laundry can be a half-day or all-day task. AR 227, 235.

(holding that grocery shopping, driving a car, and limited walking for exercise are not inconsistent with disability) (citing *Reddick,* 157 F.3d at 723 n.1) (noting that limited cooking, cleaning, and shopping are not indicative of an ability to engage in sustained work activity)).

To be clear, this court is *not* finding that Plaintiff's daily activities are consistent with her statements about pain. Nor is it finding that Plaintiff's daily activities are consistent with Plaintiff's claimed inability to work. Rather, this court holds that the ALJ's reasons for discrediting Plaintiff's symptom testimony, based on Plaintiff's daily activities, are not convincing. This is so because Plaintiff's abilities were extensively qualified; the ALJ did not acknowledge these qualifications or explain how Plaintiff's daily activities conflicted with her alleged functional limitations; and Ninth Circuit precedent is clear that an individual need not be totally incapacitated to be disabled and that light chores, cooking, etc. (of the type that Plaintiff appears to be capable of) do not necessarily translate into being able to work. Accordingly, this court holds that the ALJ erred in rejecting Plaintiff's pain and symptom testimony based on her activities of daily living.

Further, the court finds that the ALJ's rejection of Plaintiff's pain and symptom testimony was not harmless. An error is harmful unless the reviewing court "can confidently conclude that no ALJ, when fully crediting the [evidence], could have reached a different disability determination." *Stout*, 454 F.3d at 1056. Because the court found error in each of the reasons given by the ALJ for discrediting Plaintiff's pain and symptom testimony, the court cannot conclude that these errors were harmless. Put another way, the court is not confident that had the Plaintiff's pain and symptom testimony been credited, no ALJ could have reached a different disability determination.

### b. Whether substantial evidence supports the ALJ's residual functional capacity finding

Plaintiff next moves to remand this matter because she argues substantial evidence does not support the ALJ's residual functional capacity ("RFC") finding.

1 | The Commissioner notes Plaintiff's lack of specificity and argues "Plaintiff did not indicate which doctor's opinions were not properly addressed or how the ALJ's analysis was faulty." The Commissioner further argues (1) the ALJ "provided ample reasons for rejecting medical opinions[,]" (2) the ALJ was not required to rely on medical opinion in determining Plaintiff's RFC, and (3) the ALJ's RFC determination is supported by substantial evidence because the ALJ relied upon Plaintiff's "extensive medical evidence, the effectiveness of her treatment, the credibility of her subjective complaints, and Plaintiff's level of functioning . . . ."

RFC refers to the most an individual can do despite her limitations or restrictions. SSR 96-8p. In assessing a plaintiff's RFC, an ALJ must consider the combined effect of all the plaintiff's medically determinable physical and mental impairments, whether severe or non-severe. 20 C.F.R. § 404.1545(a)(2). An ALJ must also consider all the relevant medical evidence as well as other evidence, including subjective descriptions and observations of an individual's limitations by the individual and other persons (e.g., family, friends). *Id*. § 404.1545(a)(3). That said, an ALJ, not a doctor, is responsible for determining a plaintiff's RFC. *See id.* § 404.1546(c); *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) (noting that "the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC").

Here, Plaintiff fails to develop an argument that the ALJ erred in determining Plaintiff's RFC, whether because there is an absence of substantial evidence to support the RFC or otherwise. Notably, the court "cannot 'manufacture arguments'" for Plaintiff. *Independent Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (quoting *Greenwood v. Fed. Aviation Admin.,* 28 F.3d 971, 977 (9th Cir. 1994)). Rather, the court will "'review only issues which are argued specifically and distinctly . . . .'" *Id*. When a claim of error is not argued and explained, the argument is waived. *Id*. at 929-30 (holding that a party's argument was waived because the party made only a "bold assertion" of error with "little if any analysis to assist the court in evaluating its legal challenge"); *see also Hibbs v. Dep't of Human Res*., 273 F.3d 844, 873 n.34 (9th Cir. 2001) (holding an allegation of error was "too undeveloped to be capable of

assessment"). Accordingly, because Plaintiff did not argue "specifically and distinctly" how the ALJ erred in determining Plaintiff's RFC, the court cannot find that the ALJ erred.

## IV. CONCLUSION AND ORDER

Accordingly, IT IS HEREBY ORDERED that Plaintiff's motion to remand (ECF No. 12) is GRANTED. This case is remanded for further proceedings regarding the ALJ's consideration of Plaintiff's pain and symptom testimony.

IT IS FURTHER ORDERED that the Commissioner's cross-motion to affirm (ECF No. 18) is DENIED.

IT IS ORDERED that the Clerk of Court must enter judgment in favor of Plaintiff Tania Real de Ragan and against Defendant Commissioner of Social Security.

DATED: December 27, 2019

_____
BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE